UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIE SHERMAN,<br>    Plaintiff, | ) | CIVIL ACTION NO. 4:19-CV-1509 |
| | ) | |
| | ) | |
| v. | ) | (ARBUCKLE, M.J.) |
| | ) | |
| ANDREW M. SAUL,[1]<br>    Defendant | | |

MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Julie Sherman, an adult individual who resides in Tioga County, Pennsylvania (within the Middle District of Pennsylvania), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* Section 205(g) of the Social Security Act, 42 U.S.C. §405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).  The caption in this case is amended to reflect this change.

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 14). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, for the reasons stated herein the Commissioner's final decision is AFFIRMED.

## II.   BACKGROUND & PROCEDURAL HISTORY

On October 8, 2015, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr.  155). In these applications, Plaintiff alleged she became disabled as of May 26, 2010, when she was 40 years old, due to the following conditions: back and leg problems, depression, anxiety, fear, memory loss, unable to lift, push, and pull over 15 pounds, knee dislocates while walking, right leg has rod and screws, and upper back pain. (Admin. Tr. 335). Plaintiff alleges that the combination of these conditions affects her ability to lift, bend, stand, kneel, climb stairs, retain information, concentrate, and understand. (Admin. Tr. 357). Plaintiff graduated from high school and previously worked as a nursing assistant for approximately 20 years. (Admin. Tr. 46, 68).

On April 13, 2016, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 155). On April 22, 2016, Plaintiff requested an administrative hearing. *Id.* On April 30, 2018, Plaintiff, assisted by her counsel, appeared and testified during a video hearing before the Administrative Law Judge (the "ALJ") Mary J. Leary. (Admin. Tr. 154). On July 3, 2018, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 152). On September 5, 2018, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 269). On November 23, 2018, the Appeals Counsel sent Plaintiff's case back to an ALJ to give further consideration to the treating source opinion of Dr. Ronald DiSimone ("Dr. DiSimone"). (Admin. Tr. 13, 175). In compliance with the Appeals Council Order, on April 2, 2019, Plaintiff, assisted by her counsel, appeared and testified during a video hearing before ALJ Jude B. Mulvey. (Admin. Tr. 31). On April 12, 2019, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 10). On May 28, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council. (Admin. Tr. 7). On July 2, 2019, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1).

On August 30, 2019, Plaintiff initiated this action by filing a complaint. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the

applications is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1). As relief, Plaintiff requests that the ALJ's decision be vacated and benefits be awarded, or the matter be remanded for a *de novo* hearing and new decision. *Id.* On November 14, 2019, the Commissioner filed an answer. (Doc. 11). In the answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id.* Along with the answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 12).

Plaintiff's Brief (Doc. 17), the Commissioner's Brief (Doc. 18), and Plaintiff's Reply Brief (Doc. 19) have been filed. This matter is now ripe for decision.

## III.    STANDARDS OF REVIEW

### A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's

errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

### B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §

---

[2] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on April 12, 2019.

423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this

assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts

in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

## IV.   DISCUSSION

Plaintiff raises the following arguments in her statement of errors:

(1)    The ALJ failed to follow the treating physician rule rendering her RFC determination unsupported by substantial evidence.

(2)    The ALJ failed to reconcile the opinion evidence with her RFC determination, rendering her RFC determination unsupported by substantial evidence.

### A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION(S)

In her April 12, 2019 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through September 30, 2015. (Doc. 17, p. 16). Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 2, 2013, the day after the prior ALJ's decision. (Admin. Tr. 16). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairment(s): degenerative disc disease

of the lumbar spine, bilateral hip disorder, depressive disorder, bipolar disorder, and anxiety. *Id.* At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 16-17).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 404.1567(a) and 20 C.F.R. § 416.967(a). (Admin. Tr. 18). The ALJ fashioned the following RFC assessment:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except she may lift/carry 15 pounds or less. She is prohibited from climbing ladders, ropes, or scaffolds. She can occasionally balance, stoop, crouch, climb stairs, kneel, or crawl. She can perform simple, routine, repetitive work involving only simple work-related decisions with few, if any, workplace changes. She can perform work which does not require more than simple, short interactions with supervisors or coworkers, and does not require anything more than occasional contact with the public. Although she may work in proximity with others, the tasks performed should not require working in conjunction with others and should predominantly involve working with objects rather than people. She can utilize a sit/stand option where she can change position after 1 hour for 5 minutes per hour without being off task. She can frequently bilaterally reach in all directions.

*Id.*

At step four, the ALJ found that, Plaintiff could not engage in any past relevant work. (Admin. Tr. 22). At step five, the ALJ found that, considering Plaintiff's age, education, and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 23). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: microfilm document preparer, DOT#249.587-018; stuffer, DOT#731.685-014; addresser, DOT#209.587-010. (Admin. Tr. 23-24).

B. STANDARD FOR DETERMINING WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC ASSESSMENT

Each of Plaintiff's arguments concern the ALJ's assessment of the RFC between steps three and four of the sequential analysis. Plaintiff argues that in failing to accord controlling weight to the treating physicians of record—Dr. DiSimone and Dr. James Manning ("Dr. Manning")—and in failing to properly consider the opinion of Dr. Shelley Ross ("Dr. Ross")—the State agency consultant—the ALJ erred in formulating the RFC assessment. In other words, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.

The determination of an individual's RFC falls solely within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). RFC means "that which an individual is still able to do despite the limitations

caused by his or her impairment(s).'" *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, at 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). It reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. The Court's "review of the ALJ's assessment of the [claimant]'s RFC is deferential," and the "RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018); *see also Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir. 2013) ("We examine the ALJ's conclusions as to a claimant's RFC with the deference required of the substantial evidence standard of review." (internal quotation marks omitted)).

In assessing a claimant's RFC, the ALJ must consider all the evidence of the record and, regardless of its source, "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (internal citations omitted); *see* 20 C.F.R. § 404.1527(c); *see also* SSR 96-8P, 1996 WL 374182, at *2 ("RFC is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements'"). If a conflict exists in the evidence, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong

reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). It is the duty of the ALJ to explain the rationale for the weight afforded to each medical opinion, as this allows for meaningful judicial review. *Plummer*, 186 F.3d at 429 ("The ALJ must consider all the evidence and give some reason for discounting the evidence that [the ALJ] rejects." (quoting *Mason*, 994 F.2d at 1066)).

Applying the above standard to the present record, I find substantial evidence to support the ALJ's RFC determination.

C.   WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S ASSIGNMENT OF PARTIAL WEIGHT TO THE OPINION OF DR. DISIMONE AND DR. MANNING

Plaintiff's first claim of error challenges the ALJ's consideration of the medical opinions of Plaintiff's treating physicians – Dr. DiSimone and Dr. Manning. Specifically, Plaintiff argues that the ALJ failed to assess the opinions of Dr. DiSimone and Dr. Manning pursuant to the treating physician rule.

Plaintiff's argument is under 20 C.F.R. §§ 404.1527(c) and 416.927(c)(2) – provisions commonly referred to as the "treating physician rule." These provisions provide:

> (c) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the

weight we give to any medical opinion.

. . . .

(3) Treating relationship. Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the eight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2).

"Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer*, 186 F.3d at 429 (quoting *Mason*, 994 F.2d at 1066). This principle applies with particular force to the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(c); *see also* 20 C.F.R. § 416.927(c). "A treating source's opinion is not entitled to controlling weight if it is 'inconsistent with other substantial evidence in [the] case record.'"

*Scouten v. Comm'r Soc. Sec.*, 722 Fed. Appx. 288, 290 (3d Cir. 1999) (quoting 20 C.F.R. § 404.1527(c)).

      *1.    Dr. DiSimone*

Regarding Dr. DiSimone's opinion, Plaintiff argues that the ALJ accorded partial weight to Dr. DiSimone's opinion, accepting only the restriction to lifting no more than 15 pounds. Plaintiff asserts that the ALJ, however, rejected the remainder of Dr. DiSimone's opinion as inconsistent with the objective evidence, citing only subjective evidence of pain. *Id.* Specifically, Plaintiff argues:

> The ALJ did not include in her RFC any restrictions on bending or twisting, and she rejected Dr. DiSimone's opinion regarding sitting, standing, and walking, which Dr. DiSimone noted Plaintiff could not perform due to her fusion surgery. T 794, 801. While accepting Dr. DiSimone's restriction to lifting no more than 15 pounds, the ALJ rejected his opinion that Plaintiff could not perform frequent lifting. The ALJ, aside from citing Plaintiff's subjective pain complaints, failed to explain why she rejected these portions of Dr. DiSimone's opinion. The limited range of motion is purely mechanical and has nothing to do with pain, which fully supports Dr. DiSimone's opinion that Plaintiff cannot bend or twist. She is actually incapable of doing so.

> The ALJ cannot use her own credibility findings to reject a treating physician's opinion. *Morales*, 225 F.3d at 317. This is especially so in cases where the treating physician credits Plaintiff's complaints as consistent with the objective tests. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988).

(Doc. 17 p. 12).

Plaintiff further argues that that the ALJ's errors are harmful because the

vocational expert was not asked what effect, the inability to bend or twist would have on Plaintiff's ability to work. Plaintiff asserts:

> When [the vocational expert was] asked if Plaintiff could perform work with the sitting, standing, and walking limitations, the [vocational expert] testified that [Plaintiff] could not. T 55. It is assumed that all work would be precluded if Plaintiff were unable to lift any amount of weight frequently, as even sedentary work requires frequent lifting. 20 C.F.R. §§ 404.1567(a), 416.967(a). Therefore, [the] ALJ's errors in assessing Dr. DiSimone's opinion require remand.

*Id.* at p. 13.

> In response, the Commissioner argues:

> The ALJ reasonably gave Dr. DiSimone's opinion partial weight. (Tr. 19). The ALJ explicitly accounted for the lifting restrictions assessed by Dr. DiSimone by finding that Plaintiff was more limited in her ability to lift and carry than assessed by the reviewing state agency physicians, and also included a sit/stand option. (Tr. 19). However, the ALJ found that further limitations were not supported by the objective evidence of record.

> . . . .

> Although Plaintiff claims that Dr. DiSimone's opinion that she was unable to bend, or twist was supported by her surgery (ECF No. 17 at 12), Plaintiff points to no treatment records documenting a limited ability to bend or twist as might support such an assessment.

> . . . .

> Nor was the ALJ required to present the vocational expert with a question including hypothetical limitations of an inability to bend or twist; the ALJ need only include in the hypothetical question impairments that are supported by the record.

. . . .

Additionally, in any event, Plaintiff has not demonstrated that an inability to bend or twist as assessed by Dr. DiSimone would prevent her from performing the jobs identified by the vocational expert, as none of the job descriptions for these positions identify bending or twisting as a positional requirement.

(Doc. 18 pp. 12-15) (emphasis in original).

### 2. *Dr. Manning*

Plaintiff also challenges the ALJ's consideration of Dr. Manning's opinion. Specifically, Plaintiff contends that the ALJ purported to accept the social limitations, but in actuality, only accepted the limitation regarding interaction with the public. Plaintiff argues that the ALJ claimed that Dr. Manning's opinion was inconsistent with her mental status examinations, which were normal, except for impaired concentration and attention. Plaintiff, however, argues that the ALJ's reliance on her normal mental status examinations were misplaced because the ALJ accepted that the mental status examinations showed impaired concentration and attention, but failed to explain why that finding alone did not support Dr. Manning's opinion. Plaintiff argues:

Dr. Manning opined Plaintiff had mild limitations in the ability to carry out simple instructions (T 723), which could easily be caused by her impaired attention and concentration. Likewise, Plaintiff's social functioning limitations could be caused by impaired attention and concentration. The ALJ simply cannot discredit Dr. Manning's opinion as inconsistent with the impaired attention and concentration noted on

examination when she does not have the expertise to determine exactly what limitations can be caused solely by that finding. *Morales*, 225 F.3d at 317; *Frankenfield*, 861 F.2d at 408.

(Doc. 17 p. 14).

Plaintiff further argues that the ALJ's errors in assessing Dr. Manning's opinion creates error at step five of the sequential analysis. Plaintiff contends:

The ALJ's errors in assessing Dr. Manning's opinion are harmful, as the [vocational expert] was never asked about further limitations and mental functioning. Therefore, the record does not support the ALJ's finding at step five once all her limitations are considered.

*Id.*

In response, the Commissioner argues:

The ALJ included Dr. Manning's assessment that Plaintiff had social limitations by limiting her to simple, short interactions with supervisors/coworkers and no more than occasional contact with the public, but found that the remainder of his assessment was not supported by the objective evidence in the record. (Tr. 20).

. . . .

Although Plaintiff claims the ALJ erred in noting that Plaintiff often had normal mental status examinations (ECF No. 17 at 13-14), courts in this Circuit have found that normal mental status examination findings may constitute substantial evidence upon which an ALJ can rely.

. . . .

Additionally, Plaintiff's statement that her social functioning limitations "could be caused by impaired attention and concentration" (ECF No. 17 at 14) is speculative and unsupported by any citation to

the record. And, any limitations unsupported by the record were not required to be presented to the vocational expert.

(Doc. 18 p. 17, 19-20).

3.      *Treatment of Dr. DiSimone and Dr. Manning's Medical Opinions*

I am not persuaded by Plaintiff's argument that the ALJ's decision to assign partial weight to the medical opinions of Dr. DiSimone and Dr. Manning partial weight was not supported by substantial evidence. I find that substantial evidence does, in fact, support the ALJ's consideration of Plaintiff's treating physicians—Dr. DiSimone and Dr. Manning. "A cardinal principal guiding disability eligibility determinations is that the ALJ accord treating physicians reports great weight, especially when their opinions reflect expert judgement based, on a continuing observation of the patient's condition over a prolonged period of time. *Morales*, 225 F.3d at 317. However, a "treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record. *Scouten*, 722 F. App'x at 290 (alteration in original) (quoting 20 C.F.R. § 404.1527(c)(2)).

In this case, the ALJ was confronted by a record marked by contrasting medical opinions and inconsistencies regarding Plaintiff's abilities and limitations. Reconciling the discordant and conflicting threads of evidence, the ALJ assigned partial weight to the medical opinions of Plaintiff's treating physicians—Dr.

DiSimone and Dr. Manning.

In March 2010, Dr. DiSimone imposed permanent restrictions on Plaintiff, confining Plaintiff to limited duty, including no lifting, pushing, or pulling more than 15 pounds, no bending, stooping, or squatting. (Admin. Tr. 794). In December 2017, Dr. DiSimone opined that Plaintiff could not engage in repetitive bending, twisting, or lifting greater than 20 pounds. (Admin. Tr. 738). In April 2018, Dr. DiSimone opined that Plaintiff could not lift more than 15 pounds or walk a block at a reasonable pace on rough or uneven surfaces. (Admin. Tr. 801).

The ALJ accorded partial weight to Dr. DiSimone's conclusion that Plaintiff could only lift and carry 15 pounds and should avoid lifting greater than 20 pounds. (Admin. Tr. 18-19). The ALJ reasoned that Dr. DiSimone was Plaintiff's orthopedic surgeon. (Admin. Tr. 19). Thus, this aspect of his opinion was consistent with the fact that Plaintiff underwent back surgery in December 2017. *Id.* The ALJ, however, rejected the remainder of Dr. DiSimone's assessments and opinions, finding that they were not supported by the objective evidence in the record. *Id.* Instead, the ALJ found that the postoperative records following Plaintiff's second surgery demonstrated that Plaintiff denied experiencing any pain, including leg pain, and that she was walking on a daily basis. *Id.* Moreover, the ALJ noted that the record evidence demonstrated that Plaintiff denied taking any pain medication, that Plaintiff

denied any lower extremity radicular pain, and that Plaintiff stated that she was doing pretty good. *Id.* The ALJ further concluded that he accounted for Plaintiff's need to wear a back brace by restricting Plaintiff to sedentary work with a sit and stand option and limited postural activities. *Id.*

Dr. Manning, who examined Plaintiff in March 2018, opined that Plaintiff had marked limitations in the following areas: understanding and remembering simple instructions; interacting appropriately with supervisors; and responding appropriately to usual work situations and changes in a routine work setting. (Admin. Tr. 723-724). Dr. Manning further opined that Plaintiff had moderate limitations in the ability to make judgements on simple work-related decisions; moderate limitations in the ability to interact appropriately with the public; extreme limitations in understanding and remembering complex instructions; extreme limitations in carrying out complex instructions; and extreme limitations in the ability to make judgements on complex work-related decisions, and extreme limitations in interacting appropriately with co-workers. (Admin. Tr. 723-25).

The ALJ assigned partial weight to Dr. Manning's opinion, accounting for the social limitations identified by Dr. Manning by restricting Plaintiff to simple, short interactions with supervisors or coworkers, and nothing more than occasional contact with the public. (Admin. Tr. 20). The ALJ, however, also rejected the

remainder of Dr. Manning's assessment, finding that it was not supported by the objective evidence in record. *Id.* Specifically, the ALJ reasoned that updated counseling records noted that Plaintiff was "doing pretty good," and that Plaintiff felt stable on her current medication regimen. *Id.* The ALJ further concluded that with the exception of Plaintiff's impaired concentration and attention, her mental status evaluation was normal, which contradicted the significant functional limitations Dr. Manning identified. *Id.* For example, the record demonstrated that Plaintiff was alert and oriented; Plaintiff exhibited good hygiene and dressed casually; Plaintiff maintained good eye contact without psychomotor abnormalities; and Plaintiff was consistently cooperative. *Id.* The ALJ also found that Plaintiff's mental status examinations revealed that Plaintiff's thought content was consistently negative for suicidal, homicidal, or violent ideation, that Plaintiff denied a history of auditory hallucinations or delusions, that Plaintiff's cognition was grossly intact, and that Plaintiff denied experiencing any side effects from her medications. *Id.* Further, in assigning partial weight to Dr. Manning's opinion, the ALJ found that updated progress notes described Plaintiff's psychiatric evaluations as normal. *Id.* The ALJ also found that Plaintiff's counseling records indicated that she was assigned a Global Assessment of Functioning ("GAF") score of 60 to 65, which was

inconsistent with the "marked" and "extreme" limitations Dr. Manning identified.[3]
*Id.* Thus, the ALJ accorded partial weight to the social restrictions Dr. Manning
identified and afforded limited weight to the remainder of his assessment. *Id.*

Here, the ALJ accounted for the social limitations identified by Dr. Manning
by restricting Plaintiff to "simple, short interactions with supervisors or coworkers,
and nothing more than occasional contact with the public." (Admin. Tr. 20). The
ALJ, however, rejected the remainder of Dr. Manning's opinion, finding that it was
not supported by substantial evidence. *Id.* It is the right and responsibility of the ALJ
to make such assessments, and I find that the ALJ's decision is supported by
substantial evidence.

4.      *The ALJ's Support for Discounting the Opinions of Dr. DiSimone
        and Dr. Manning*

The ALJ discounted the opinions of Dr. DiSimone and Dr. Manning in light
of other contrasting medical opinions and findings. I summarize these medical

---

[3] The Global Assessment of Functioning ("GAF"), scores are used to rate the
seriousness of a mental illness. It measures how much an individual's symptoms
affect his or her daily life on a scale of 0-100. Scores in the range of 51-60
demonstrate moderate symptoms (e.g. flats and circumstantial speech, occasional
panic attacks) or moderate difficulty in social occupational, or social functioning
(e.g., few friends, conflicts with co-workers). Scores in the range of 61-70
demonstrate some mild symptoms (e.g. depressed mood and mild insomnia) or some
difficulty in social occupational, or school functioning (e.g., occasional truancy, or
theft within the household), but generally functioning pretty well and some
meaningful interpersonal relationships.

opinions and findings and the ALJ's treatment of these opinions.

In March 2016, Dr. Justine Magurno ("Dr. Magurno") prepared a medical source statement of Plaintiff's ability to perform work-related activities. (Admin. Tr. 487). In the evaluation, Dr. Magurno opined that Plaintiff was capable of sitting for six hours in an eight-hour workday, and that Plaintiff could stand and walk for three hours in an eight-hour workday. (Admin. Tr. 483). Dr. Magurno further opined that Plaintiff was capable of frequently lifting and carrying no more than ten pounds, occasionally lifting and carrying no more than 20 pounds, and could never lift 50 pounds or greater. (Admin. Tr. 482). Additionally, Dr. Magurno opined that Plaintiff could occasionally climb stairs and ramps, could occasionally stoop, could occasionally operate foot controls, could frequently balance, kneel, crouch, and crawl, and could never climb ladders or scaffolds. (Admin. Tr. 484-85). In terms of environmental hazards, Dr. Magurno opined that Plaintiff could never be exposed to unprotected heights and vibration; that Plaintiff could occasionally move mechanical parts; and that Plaintiff could tolerate exposure to humidity, wetness, dust, odors, fumes and pulmonary irritants, heat, and cold, and was capable of operating a motor vehicle. (Admin. Tr. 486).

The ALJ afforded partial weight to Dr. Magurno's opinion, finding that based upon Dr. Magurno's opinion, Plaintiff was capable of performing sedentary work.

(Admin. Tr. 19). The ALJ further stated that she afforded partial weight to Dr. Magurno's opinion based upon her programmatic expertise and based upon the fact that Dr. Magurno's opinion was generally consistent with the diagnostic images in record. *Id.* The ALJ further explained that the lifting restrictions identified by Dr. DiSimone were accounted for in the RFC by finding that Plaintiff had no greater lifting or carrying restrictions than those opined by Dr. Magurno and by including a sit and stand option within the established RFC. *Id.* The ALJ, however, did not adopt the bilateral foot controls and hazardous restrictions identified by Dr. Magurno, finding that these limitations were not supported by an underlying "severe" impairment. *Id.*

In March 2016, Dr. James Butcofski ("Dr. Butcofski") prepared a Physical Residual Functional Capacity Assessment.  (Admin. Tr. 121-22, 140-42). In his evaluation, Dr. Butcofski opined that Plaintiff was capable of sitting for approximately six hours in an eight-hour workday and was capable of standing and walking for four-hours total. (Admin. Tr. 121, 140). Dr. Butcofski opined that Plaintiff was capable of occasionally lifting and carrying twenty pounds and was capable of frequently lifting and carrying ten pounds. *Id.* Dr. Butcofski further opined that Plaintiff was capable of occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, crawling, could never climb ladders,

ropes, and scaffolds, and was limited in her lower extremities. (Admin. Tr. 121-22, 140-41). Additionally, Dr. Butcofski opined that Plaintiff should avoid extreme cold, fumes, odors, dusts, gases, poor ventilation, and hazards (machinery, heights, etc.). (Admin. Tr. 122, 141). Dr. Butcofski, however, opined that Plaintiff could have unlimited exposure to extreme heat, wetness, humidity, noise, and vibration. *Id.*

The ALJ accorded partial weight to Dr. Butcofski's opinion, finding his opinion generally consistent with the diagnostic images in the records. *Id.* Additionally, the ALJ noted that Dr. Butcofski's opinion further supported the ALJ's conclusion that Plaintiff was capable of performing sedentary work. *Id.* The ALJ, however, noted that she did not adopt the respiratory limitations provided by Dr. Butcofski because they were not supported by an underlying "severe" impairment. *Id.*

In April 2016, Dr. Shelley Ross ("Dr. Ross") completed a Mental Residual Functional Capacity Assessment. In the assessment, Dr. Ross examined Plaintiff under the following categories of limitation: (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaption. (Admin. Tr. 123). In the category of understanding and memory, Dr. Ross concluded that Plaintiff had no limitations. *Id.* In the category of sustained concentration and persistence, Dr. Ross opined that Plaintiff had moderate limitations in the following

areas: the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or in proximity to others without being distracted by them; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms to perform at a consistent pace without an unreasonable number and length of rest periods. *Id*. Dr. Ross opined, however, that Plaintiff had no limitations in the ability to carry out very short and simple instructions and no limitations in the ability to make simple work-related decisions. *Id.*

In the category of social interaction, Dr. Ross concluded that Plaintiff had moderate limitations in the following categories: the ability to ask simple questions or request assistance; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Admin. Tr. 124). Dr. Ross opined, however, that Plaintiff had a marked limitation in her ability to interact appropriately with the general public. *Id.*

Lastly, in the category of adaption, Dr. Ross concluded that Plaintiff had moderate limitations in the ability to respond appropriately to changes in the work setting and moderate limitations in the ability to set realistic goals or make plans independently of others. (Admin. Tr. 124). Dr. Ross opined, however, that Plaintiff had no significant limitations in the ability to be aware of normal hazards and take appropriate precautions and no significant limitations in the ability to travel in unfamiliar places or use public transportation. *Id.*

The ALJ accorded partial weight to Dr. Ross's opinion.[4] (Admin. Tr. 19). The ALJ reasoned that the assignment of partial weight to the opinion of Dr. Ross was based on her programmatic expertise. *Id.* The ALJ further explained that the opinion of Dr. Ross was supported by the counseling records, which demonstrated that Plaintiff was doing well, that Plaintiff was stable on her medications, and that Plaintiff experienced no difficulty sleeping or eating, and that Plaintiff's psychiatric evaluation revealed normal findings. (Admin. Tr. 19-20).

In weighing the opinion evidence of record, the ALJ also considered Plaintiff's GAF scores of record. (Admin. Tr. 20). As mentioned above, the record evidence demonstrated that Plaintiff was assigned a GAF score of 60 to 65. *Id.* The

---

[4] Plaintiff also argues that the ALJ erred in assigning partial weight to the opinion of Dr. Ross. I address this argument later in this opinion.

ALJ assigned limited weight to the GAF scores of record, without any further discussion of what they were, concluding that they were subjectively assessed scores that revealed only snapshots of the claimant's behavior, and were neither standardized nor based on normative data. *Id.* Plaintiff does not point to any GAF Score in the record that was improperly ignored.

The ALJ discounted the opinions of Dr. DiSimone and Dr. Manning in light of these contrasting medical opinions and findings but also cited to other record evidence, including Plaintiff's own statements. For example, while Plaintiff reported and testified to various limitations—e.g., she cannot lift, carry, push, or pull over 15 pounds, she cannot bend, she can only walk for more than 15 minutes, she has memory problems, etc., (Admin. Tr. 351, 357)—she also reported that she could attend to her personal needs, cook, clean, do laundry, go shopping, manage her finances, and engage in leisure activities, such as watching TV, listening to the radio, reading, and socializing with friends. (Admin. Tr. 354, 479).

Whereas, as here, the "ALJ provide[s] sufficient reasons for the weight given to the evidence from [a] . . . treating physician[]," which reasons, in most cases can be set forth in a sentence or short paragraph, there is no basis for disturbing the ALJ's weight determination. *Sponheimer v. Comm'r of Soc. Sec.*, 734 F. App'x 805, 807 (3d Cir. 2018). Plaintiff's argument simply asks the court to re-weigh the evidence,

which this court cannot do. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder.'" (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992))). Because the Court cannot re-weigh the evidence, I find the ALJ has not erred in assigning partial weight to the opinions of Dr. DiSimone and Dr. Manning. Remand is not warranted regarding the ALJ's assignment of partial weight to the medical opinions of Dr. DiSimone and Dr. Manning.

   5. *The ALJ's Reliance on Normal Mental Status Examinations Regarding Dr. Manning's Opinion*

Plaintiff also argues that the ALJ's reliance on normal mental status examinations with regard to Dr. Manning's opinion is misplaced. Plaintiff argues that the ALJ accepted that the mental status examinations demonstrated impaired concentration and attention but failed to explain why that finding alone did not support Dr. Manning's opinion. I find, however, that Plaintiff's contentions on this score are without merit. As correctly stated by the Commissioner, the courts in this Circuit have consistently ruled that normal mental status examination findings may constitute substantial evidence upon which an ALJ may rely. *Nelson v. Astrue*, 321 F. App'x 195, 197 (3d Cir. 2009); *see also Vargas v. Colvin*, No. 1:14-CV-02407-YK-GBC, 2016 WL 1084966, at *14 (M.D. Pa. Jan. 14, 2016). This argument is

without merit and does not warrant remand.

### 6.    *Questions Presented to the Vocational Expert*

Plaintiff also argues that the ALJ erred at step five of the sequential analysis, because the hypothetical question(s) posed to the vocational expert did not adequately reflect Plaintiff's impairments. Specifically, regarding Dr. DiSimone's opinion, Plaintiff argues that the vocational expert was not asked what effect the inability to bend or twist would have on Plaintiff's ability to work. Additionally, with respect, to Dr. Manning's opinion, Plaintiff contends that the vocational expert was not asked about further limitations and mental functioning. Plaintiff argues that the ALJ committed a reversible error warranting remand.

Similarly, I am not persuaded by Plaintiff's arguments on this issue. To begin, although Plaintiff asserts that Dr. DiSimone's opinion restricting her from bending or twisting was supported by her second surgery, Plaintiff fails to identify any treatment records documenting a limited ability to bend or twist in support of this assessment. Additionally, the jobs identified by the ALJ, including a microfilm document preparer, DOT#249.587-018, a stuffer, DOT#731.685-014, and an addresser DOT#731.685-014, do not require bending or twisting as a job requirement. Further, Plaintiff fails to demonstrate how an inability to bend, or twist, as assessed by Dr. DiSimone, would prevent her from performing the jobs identified

by the ALJ.

I find that Plaintiff's assertions suggesting that the vocational expert was not asked about further limitations and mental functioning with respect to Dr. Manning's opinion unavailing. The ALJ need only include in the hypothetical questions a claimant's credibly established impairments. *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004). Additionally, while the hypothetical question posed to the vocational expert must account for all of a claimant's impairments, "those findings need only be "adequately conveyed" in the ALJ's statement of the limitation, not recited verbatim. *Hess v. Commissioner Social Security*, 931 F.3d 198, 208-10 (3d Cir. 2019).

D.   WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S ASSIGNMENT OF PARTIAL WEIGHT TO THE OPINION OF DR. ROSS

Plaintiff also challenges the ALJ's assignment of partial weight to the opinion of Dr. Ross. Specifically, Plaintiff contends that the ALJ assigned partial weight to Dr. Ross's opinion but failed to explain her reasoning for rejecting Dr. Ross's mental functional limitations. In assigning partial weight to Dr. Ross's opinion, Plaintiff argues that the ALJ only noted Dr. Ross's programmatic expertise and stated that the opinion was supported by counseling records. Therefore, it is impossible to discern the ALJ's reasoning for rejecting Dr. Ross's limitations. Additionally, Plaintiff asserts that by rejecting Dr. Ross's opinion, the ALJ had no other opinion

upon which to rely, as she also rejected Dr. Manning's opinion.

Plaintiff argues:

> Specifically, Dr. Ross opined Plaintiff would have some difficulty maintaining concentration and attention for extended periods, completing a normal workday and workweek, and maintaining regular attendance. T 123-24, 143. She opined that Plaintiff would need special supervision to sustain an ordinary routine. T. 124, 143. The ALJ's RFC determination does not reflect any of these limitations. As the ALJ did not provide a single reason why she did not accord more than partial weight to this opinion, she has failed to follow regulations.

(Doc. 17 p. 16).

Plaintiff further argues that it is unclear how additional mental limitations would affect her ability to perform work, as the vocational expert was not questioned as to this issue at the administrative hearing. *Id.* Specifically, Plaintiff argues:

> The [vocational expert] was asked regarding off task time, and testified that if off task twenty percent, Plaintiff would be unable to work. T. 55. Further, requiring special supervision in order to sustain a routine appears to be accommodated work, which is not considered substantial gainful activity. 20 C.F.R. §§ 404.1573(c), 416.973(c).

*Id.*

In response, the Commissioner argues that Plaintiff's argument is without merit because Plaintiff misreads the Mental Residual Functional Capacity Assessment ("MRFC") form that Dr. Ross completed as reflecting an "opinion" that was not actually made. In support of his argument, the Commissioner relies on the Program Operations Manual System ("POMS") operating policy for the MRFC

(POMS DI 24510.060). The Commissioner argues:

> Twenty mental function items are grouped under four main categories and may be rated not significantly limited, moderately limited, or markedly limited. [http://secure.ssa.gov/poms.nsf/lnx/0424510060] Section III is where the actual mental RFC is recorded and it is recorded in a "narrative format." *Id.*
>
> Here, Plaintiff asserts that the ALJ failed to account for Dr. Ross's "findings" that Plaintiff would have some difficulty maintaining concentration and attention for extended periods, completing a normal workday/workweek, and maintaining regular attendance, and would need special supervision to sustain an ordinary routine (ECF No.17 at 16, citing Tr. 123-24, 143). However, these ratings are part of Section I. Therefore, these ratings do not constitute an RFC assessment. *See Wise v. Comm'r of Soc. Sec.*, 626 F. App'x 357, 360 (3d Cir. 2015) ("we have said that ALJ's are not required to give any weight to these fill-in-the-blank and checklist portions of RFC assessments and that their focus instead should be on the narrative portions of the assessments where the medical experts expound on their opinions.") *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 636 (3d Cir. 2010) ("As the Social Security Administration's guidelines . . . explain, however, Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment.")

(Doc. 18 p. 22-23).

Additionally, the Commissioner quotes directly from the MRFC form, which states:

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and

memory, sustained concentration and persistence, social interaction and adaptation). Any other assessment information deemed appropriate may be recorded in the MRFC – Additional Explanation Text box.

(Admin. Tr. 122, 142).

The Commissioner further argues that the ALJ did account for Dr. Ross's limitations in the RFC assessment by incorporating additional limitations in the RFC, including:

[Plaintiff] can perform simple, routine, repetitive work involving only simple work-related decisions with few, if any, workplace changes. She can perform work which does not require more than simple, short interactions with supervisors or coworkers, and does not require anything more than occasional contact with the public. Although she may work in proximity with others, the tasks performed should not require working in conjunction with others and should predominantly involve working with objects rather than people.

(Admin. Tr. 18).

I find that substantial evidence supports the ALJ's consideration of Dr. Ross's opinion. In the instant case, the ALJ accorded partial weight to the opinion of Dr. Ross. As mentioned above, the ALJ concluded that Dr. Ross's opinion supported the conclusion that Plaintiff could perform simple work activity with limited social interaction. The ALJ based his conclusion on Dr. Ross's programmatic expertise. The ALJ further explained that Dr. Ross's opinion was generally consistent and supported by the counseling records, which indicated that Plaintiff was doing well, she was feeling stable on her medications, she denied any difficulty with sleeping or

eating, and the updated progress notes indicated that Plaintiff's psychiatric evaluation was normal. Therefore, the ALJ accorded partial weight to Dr. Ross's opinion.

Plaintiff argues that the RFC fails to include any of the limitations provided by Dr. Ross. I find this argument, however, unavailing. As correctly stated by the Commissioner, the ALJ did consider Dr. Ross's opinion in formulating the RFC. For example, the ALJ explicitly stated that "[t]he opinions of Dr. Shelley Ross, Ph.D., a state agency medical consultant, supported the conclusion that [Plaintiff] could perform simple work activity with limited social interaction." (Admin. Tr. 19). In support of this contention, the ALJ confined Plaintiff to sedentary work and incorporated additional limitations to address her mental functioning. Further, while Plaintiff argues that the ALJ "had no other opinion upon which to rely, as she also rejected Dr. Manning's opinion . . ." (Doc. 17, p. 15). The law is clear, "The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Moreover, the Third Circuit Court of Appeals has made clear that "there is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006).

To reiterate, the Court is not tasked with revisiting these factual issues, but with determining whether the ALJ provided valid reasons for her evaluations and based her conclusions on substantial evidence. Because the ALJ provided adequate articulations, I find that substantial evidence supports the ALJ's assignment of partial weight to the opinion of Dr. Ross. Thus, I find that remand is not warranted regarding the ALJ's treatment of Dr. Ross's opinion.

E.   QUESTIONS TO THE VOCATIONAL EXPERT REGARDING FURTHER MENTAL LIMITATIONS

Additionally, Plaintiff's contention that her case should be remanded because the vocational expert was not asked how further mental limitations would affect her ability to perform work is without merit. It is longstanding precedent in the Third Circuit, that the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments. *Rutherford,* 399 F.3d at 553. In the instant case, the ALJ posed a hypothetical question concerning Plaintiff's ability to perform alternative employment, which included mental functioning limitations. (Admin. Tr. 49-57). Specifically, the ALJ asked the following:

> Assume an individual the same age, education, and work background as the claimant. I'd like you to consider that individual at the light exertional level, who is prohibited from climbing ladders, ropes or

scaffolds. Can occasionally balance, stoop, crouch, crawl, kneel and climb stairs . . . Is limited to simple, routine, repetitive work involving only simple, work-related decisions with few, if any, work place changes.

That individual can perform work that does not require more than simple, short interactions with supervisors or coworkers and does not require any contact with the public. Excuse me.

Does not require anything more than occasional contact with the public, and although the individual may work in proximity with others, the tasks performed should not require working in conjunction with others and should predominantly involve working with objects rather than people.

. . . .

Could that individual perform the past job you described as actually performed or as generally performed in the national economy?

(Admin. Tr. 51-52).

I find that the hypothetical question posed to the vocational expert adequately portrayed Plaintiff's mental limitations and how those limitations would affect Plaintiff's ability to perform work. The functional limitation findings do not require particular language to appear in the statement of the limitation. *Hess,* 931 F.3d at 208. The "findings need only be 'adequately conveyed' in the ALJ's statement of the limitation, not recited verbatim." *Id.* at 210. Remand is not warranted on the questions posed to the vocational expert regarding mental limitations.

V.     CONCLUSION

Accordingly, Plaintiff's request for the award of benefits, or in the alternative

a new administrative hearing is DENIED as follows:

(1)     The final decision of the Commissioner will be AFFIRMED.

(2)     Final judgment will be issued in favor of the Commissioner of the
Social Security Administration.

(3)     An appropriate Order shall issue

Date: August 10, 2020                              BY THE COURT

                                                   *s/William I. Arbuckle*
                                                   William I. Arbuckle
                                                   U.S. Magistrate Judge